******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* LAURA C. CRAFTER
(AC 41302)

Elgo, Moll and Bishop, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of assault in the first degree, the defendant appealed to this court. The defendant's conviction stemmed from an incident in which she lacerated the victim numerous times with a knife. D, who was dating the victim, and M, who was dating the defendant, engaged in a violent fistfight. As they were fighting, the defendant came out of her house and approached the scene holding a ten inch knife. The victim, upon seeing the defendant, pleaded with the defendant to leave D and M alone. In response, the defendant told the victim to "shut the fuck up" and poked her on the forehead with the knife. The victim, fearing that the defendant was going to severely injure D, attempted to grab the knife from the defendant, and a fight for the knife ensued, during which the victim sustained lacerations to her face, thumb and back, which resulted in permanent scarring. At trial, following the close of the state's evidence, the trial court denied the defendant's motion for a judgment of acquittal. *Held*:

1. The evidence presented at trial was sufficient for the jury to find beyond a reasonable doubt that the defendant intended to cause serious physical injury to the victim: the jury reasonably could have inferred the defendant's intent to cause serious physical injury to the victim from her use of a large, ten inch knife to inflict numerous lacerations on the victim, which resulted in permanent scarring, and from her behavior following the incident, which exhibited a consciousness of guilt; moreover, evidence presented at trial of the defendant's interaction with D on the day before the incident, in which D punched the defendant, permitted the jury to infer that, when the defendant came out of her house with a knife, she intended to seriously injure D and that, when the victim requested that she leave D and M alone and foiled her plan to harm D by attempting to grab the knife, the defendant directed her anger toward the victim, and, although the defendant testified that she never intended to harm D or the victim, the jury was free to discredit her version of events on the basis of the evidence before it.

2. The defendant could not prevail on her claim that the trial court committed plain error by failing to instruct the jury, sua sponte, on the defense of others, as that court was not obligated to provide a defense of others instruction to the jury.

*State* v. *Ortiz* (71 Conn. App. 865), clarified.

Argued February 11—officially released July 7, 2020

*Procedural History*

Substitute information charging the defendant with two counts of the crime of assault in the first degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Pavia, J.*; thereafter, the court denied the defendant's motion for a judgment of acquittal; verdict and judgment of guilty of one count of assault in the first degree, from which the defendant appealed to this court. *Affirmed.*

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Pamela J. Esposito*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Laura C. Crafter, appeals from the judgment of conviction, rendered following a jury trial, of assault in the first degree by means of a dangerous instrument in violation of General Statutes § 53a-59 (a) (1).[1] On appeal, the defendant claims that (1) the court erred in denying her motion for a judgment of acquittal because the evidence was insufficient to establish that she intended to cause serious physical injury to the victim, (2) the state failed to disprove the defendant's defense of self-defense beyond a reasonable doubt, and (3) the court committed plain error by failing to instruct, sua sponte, the jury on defense of others within its self-defense instruction.[2] We affirm the judgment of the trial court.

On the basis of the evidence adduced at trial, the jury reasonably could have found the following facts. In November, 2015, Michael Reed was dating the defendant, and his brother, Demetrius Reed, was dating the victim, Jasmine Turkvan.[3] Prior to the events giving rise to this case, Demetrius, Michael, their younger brother, Christian Reed (Christian), and their mother lived together. Their mother was evicted, and the family's living arrangements changed. Demetrius went to live with the victim, and Michael, Christian, and their mother moved in with the defendant at a housing complex in Bridgeport. Considerable animosity existed between Michael and Demetrius, who would, on occasion, engage in fistfights to settle their personal disputes.

On or about November 19, 2015, Demetrius arrived at the defendant's apartment to obtain marijuana from his mother. Upon opening the door, Demetrius overheard the defendant yelling. Demetrius and the defendant did not get along, nor did they respect one another. After obtaining the marijuana, Demetrius exited the apartment and headed for the elevator. Shortly thereafter, the defendant opened the apartment door and shouted a racial epithet at Demetrius, who responded by remarking on the defendant's lack of income. The defendant proceeded into the hallway, and, as Demetrius entered the elevator, she spat at him. Demetrius emerged from the elevator and proceeded to punch the defendant in the face with sufficient force to knock her to the ground. He then left the building.

On the morning of the next day, November 20, 2015, Demetrius dropped Christian and his niece off at school.[4] Around 3:15 p.m., Demetrius and the victim returned to the school to pick them up. Because Demetrius did not have an automobile of his own, he went with the victim in her vehicle. Unbeknownst to Demetrius, Michael was already at the school picking up his daughter.[5] The defendant was accompanying Michael at that time. As Michael and the defendant departed the

school, Demetrius and the victim followed; Demetrius intended to engage in a fistfight with Michael to "get what [he] had off [his] chest." Demetrius and the victim followed Michael and the defendant to the house of the defendant's mother, located at 95 Cambridge Street in Stratford. At Michael's instruction, the defendant brought Michael's daughter inside. Demetrius exited the vehicle with the intention of fighting Michael. Michael told Demetrius that they should not engage in the fight in front of the house, and the two agreed to drive around the block to fight in a more secluded area. Around the corner from the house, the two men exited their respective vehicles and engaged in a violent fistfight, which resulted in Demetrius biting through Michael's eyelid to avoid getting "choked out" and Michael sustaining a dislocated shoulder and suffering an asthma attack.

While the melee between the brothers was unfolding, the victim, who remained in the passenger seat of her vehicle that Demetrius had driven around the block, observed the defendant approaching the scene with "something shiny in her hand," which turned out to be a ten inch "Michael Myers" style kitchen knife. According to the victim, she exited the vehicle and pleaded with the defendant to leave the brothers alone, as there was nothing that they could do to stop the fight. She did not know from where the defendant had obtained the knife. The defendant responded by telling the victim to "shut the fuck up" and poking the victim in the forehead with the knife. Fearing that the defendant was going to severely injure Demetrius, the victim panicked and attempted to grab the knife from the defendant. The victim and the defendant, contemporaneously with the fight between the brothers, then engaged in a fight over the knife. As the two women fought for control of the knife, the defendant was waving the knife around, the two were pulling each other's hair, and the victim began to lose feeling in her hand.

Both fights abruptly came to a halt. The victim was unaware that she had sustained a cut on her face until Demetrius told her so. Upon noticing the extent of the victim's injuries, Demetrius proceeded to drive the victim to St. Vincent's Medical Center in Bridgeport (St. Vincent's). Demetrius realized en route that the victim had sustained a wound to her back as well. At St. Vincent's, it was determined that the victim had sustained lacerations to the left side of her face, to her right thumb, and to the left side of her back, resulting in scarring and disfigurement. The injury to the face required twenty stitches, the injury to thumb required twelve stitches, and the back injury required nine sutures to close. She was released from St. Vincent's on the same day.

Meanwhile, Officer Brian McCarthy of the Stratford Police Department responded to a disturbance in the

vicinity of 95 Cambridge Street in Stratford and met with the defendant and Michael. The defendant reported that she had been in a fight with another female and indicated to him that no weapons were used in the fight.[6] Officer McCarthy learned that the victim had sustained knife injuries and proceeded to St. Vincent's to question the victim and Demetrius. He took photographs of the victim's injuries. The knife used by the defendant in the brawl with the victim was never recovered.

The defendant was arrested and was charged by way of a substitute information with one count of assault in the first degree with a dangerous instrument and one count of assault in the first degree with extreme indifference to human life in violation of §§ 53a-59 (a) (1) and 53a-59 (a) (3), respectively.[7] A jury convicted the defendant of assault in the first degree in violation of § 53a-59 (a) (1). In accordance with the verdict, the trial court sentenced the defendant to ten years of incarceration, execution suspended after five years, followed by five years of probation. This appeal followed. Additional facts and procedural history will be set forth where necessary.

I

The defendant's first claim is that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that she intended to cause serious physical injury to the victim. For the reasons that follow, we are unpersuaded.

The standard by which we review the defendant's claim is well established. "In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reason-

able hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Allan*, 311 Conn. 1, 25, 83 A.3d 326 (2014).

"A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument . . . . A [d]angerous instrument is defined as any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . . Serious physical injury is defined as physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . . Assault in the first degree is a specific intent crime. It requires that the criminal actor possess the specific intent to cause serious physical injury to another person." (Citations omitted; internal quotation marks omitted.) *State* v. *Hudson*, 180 Conn. App. 440, 453–54, 184 A.3d 269, cert. denied, 328 Conn. 936, 184 A.3d 267 (2018).

The following additional facts, which the jury reasonably could have found, and procedural history are relevant to our consideration of the defendant's claim. The defendant testified in her own defense. On direct examination, she testified as follows. She and Michael arrived at her mother's home following their trip to the school on November 20, 2015, and Michael instructed her to bring his daughter inside the house. From inside the house, she could see Demetrius and Michael fighting. She proceeded to exit the house to check on Michael and was not carrying a weapon. According to the defendant, the victim was already outside of her vehicle, which Demetrius had driven, and initiated the second scuffle by hitting the defendant in the eye. The defendant unequivocally denied using a weapon on the victim. On cross-examination, the state elicited testimony discrediting the defendant and her version of events. Specifically, the defendant admitted that she had untruthfully told the police that she, rather than Michael, had been driving a car that was involved in an accident a few days prior to the fight with the victim in order to protect Michael, who had an outstanding arrest warrant. She also admitted that she had told her father to tell the police the extent of Michael's injuries and to state that "no weapons were displayed."

At the close of the state's evidence, the defendant moved for a judgment of acquittal. The defendant argued that the evidence was insufficient to establish that she intended to cause serious physical injury to the victim. The defendant reasoned that because the victim could not precisely identify how she was injured

during the fight, which involved tussling, hair pulling, and both parties grabbing for the knife, the defendant did not have the mens rea necessary for conviction. The court denied the motion, concluding in relevant part that "the type of weapon that [was] used, the manner in which the weapon [was] used, the significance of the injury, [and] the amount of force that might be necessary in order to result in the type of [injuries sustained by the victim]" would allow the jury to infer intent.

The defendant's first claim on appeal relates solely to the specific intent element of the crime for which she was convicted. The defendant contends that the fracas between her and the victim was caused by the victim, when she grabbed the knife from the defendant. The defendant maintains that the cumulative evidence, direct and circumstantial, failed to demonstrate that she intended to cause serious physical injuries to the victim. The state counters that, viewing the evidence in the light most favorable to sustaining the verdict, the evidence was sufficient on the basis of the injuries caused by the defendant and the permissible inferences that the jury was entitled to draw therefrom. We agree with the state.

In her principal appellate brief, the defendant points us to numerous cases that collectively stand for the proposition that, although circumstantial evidence may be used by the jury to infer intent, the jury may not resort to speculation to do so. The defendant also analogizes in part to our Supreme Court's decision in *State* v. *Carpenter*, 214 Conn. 77, 570 A.2d 203 (1990), as an example of a case in which the facts "suggested a spontaneous burst of frustration and accidental injury . . . ." In *Carpenter*, our Supreme Court concluded that the evidence that the defendant killed the victim, a young child, by throwing her into a bathtub, was insufficient to infer that the defendant intended to cause the victim's death. Id., 83. Because the state in *Carpenter* "presented no evidence of any weapon, plan or motive, nor [presented] any evidence connecting the defendant to a pattern of abusive behavior," and "the defendant did not attempt to flee but rather, when he realized the gravity of the situation, immediately summoned medical aid for the baby," the evidence was insufficient to prove beyond a reasonable doubt that the defendant had the specific intent to cause the victim's death. Id., 83–85.

The defendant also suggests that the circumstances of the present case are akin to those in *State* v. *Williams*, 187 Conn. App. 333, 202 A.3d 470 (2019). In *Williams*, the defendant was convicted of manslaughter in the first degree and attempt to commit home invasion. Id., 334 n.1. In that case, the defendant and his cohorts travelled to an apartment complex where one of the victims, Clemente, resided. Id., 335. One of the perpetrators, Jones, and Clemente had an ongoing dispute over

a girl. Id. On the evening of the crime, Clemente was not in his apartment but, rather, in another unit. Id. At some point after the defendant and his cohorts unsuccessfully attempted to gain access to that unit with baseball bats, Jones and Clemente engaged in a fight outside while the defendant looked on. Id., 335–36, 340. Clemente's stepfather, Lopez, confronted the defendant and the two began to fight; the defendant repeatedly stabbed Lopez, who later died from his injuries. Id., 336–37. On appeal, the defendant claimed that the evidence was insufficient to support his conviction of attempt to commit home invasion. Id., 337. This court agreed, looking first to the state's theory of the case with respect to the crime of attempt to commit home invasion, namely, that the defendant intended to commit a felony assault on Clemente had he gained access to the apartment; as opposed to *any* crime as permitted by the statute. Id., 342; see also General Statutes § 53a-100aa (a). This court concluded that there was no evidence from which the jury could infer that the defendant specifically intended to commit such an assault against Clemente. Id., 347–48. Furthermore, because the state charged the defendant as a principal and not as an accessory, the intentions of his codefendants as to Clemente were irrelevant to the defendant's intent. Id., 348.

Neither case supports the defendant's position. With respect to her reliance on *Carpenter*, the defendant conceded that a knife was used by her during the fight with the victim. Further, the jury reasonably could have found that she called the police following the fight, not out of concern for the victim but, rather, for herself and Michael. Indeed, the defendant told her father to tell the police, falsely, that "no weapons were displayed." Contrary to the circumstances in *Williams*, here, the defendant and the victim's fight resulted in serious physical injuries to the victim, whereas in *Williams* there was no evidence that the defendant harmed or intended to harm Clemente, as required to sustain the conviction for home invasion under the state's theory in that case.

The defendant also contends that the evidence established that she was wildly swinging the knife around in the struggle with the victim, and, therefore, she could not have intended to injure the victim. "[I]t is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pommer*, 110 Conn. App. 608, 619, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). The jury was free to infer that her actions with the knife demonstrated an intention to cause serious injuries to the victim—even if those actions were not necessarily calmly carried out or premeditated in nature. When the victim requested that the defendant leave the fighting men alone, the jury reasonably could have inferred that the defendant's anger became directed at the victim, as evidenced by

the defendant's demand that she "shut the fuck up" and the defendant's subsequent poke of the victim on the forehead with the knife. This conduct was sufficient to infer that, in that moment, the defendant possessed the intent to cause the victim serious bodily injury.

In addition, "[a] fact finder may also infer an intent to cause serious physical injury from other circumstantial evidence such as the type of weapon used and the manner in which it was used." *State* v. *Wells*, 100 Conn. App. 337, 344–45, 917 A.2d 1008, cert. denied, 282 Conn. 919, 925 A.2d 1102 (2007). The large, ten inch knife used by the defendant to cause numerous lacerations on the victim, which resulted in permanent scarring, allowed the jury to infer her intention. In particular, the evidence of the knife wound to the victim's back allowed the jury to infer that the defendant intentionally harmed the victim while her back was turned. Moreover, the jury was entitled to use its common sense that a large kitchen knife was capable of inflicting serious bodily injury. These were reasonable inferences on which the jury could base its verdict.

Additionally, the evidence of the defendant's interaction with Demetrius on the previous day, during which she spat at him and he punched her, causing her to fall to the ground, allowed the jury to infer that she came out of the house with a knife to seriously injure him. The jury could have found that, when the victim foiled the defendant's plan by attempting to grab the knife, the defendant directed her anger toward the victim and slashed her several times with the knife. We also note that, even if the defendant's intention to seriously injure the victim was formed at the instant the victim interfered with her approach toward Demetrius, this court has concluded that a single, instantaneous, and reflexive act was sufficient to support a conviction of assault in the first degree. See *State* v. *Bunker*, 27 Conn. App. 322, 332–33, 606 A.2d 30 (1992). Although the defendant testified that she never intended to harm Demetrius or the victim, the jury was free to discredit her version of events—in particular, that no knife was used—on the basis of the evidence that was before it.

Finally, we agree with the state that the defendant's behavior following the brawl exhibited a consciousness of guilt.[8] "[Consciousness of guilt] is relevant to show the conduct of an accused, as well as any statement made by him [or her] subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act. . . . The state of mind which is characterized as guilty consciousness or consciousness of guilt is strong evidence that the person is indeed guilty . . . and under proper safeguards . . . is admissible evidence against an accused." (Internal quotation marks omitted.) *State* v. *Henry*, 76 Conn. App. 515, 547–48, 820 A.2d 1076, cert. denied, 264 Conn. 908, 826 A.2d 178 (2003). Before the defendant's father spoke

on the phone with the police, the defendant told her father to mention that "no weapons were displayed." When Officer McCarthy responded to the defendant's residence, the defendant maintained that she knew nothing about any knife other than the one used by Demetrius to puncture her automobile tire. The police were also unable to recover the weapon used by the defendant, which, on the basis of Demetrius' testimony that he observed Michael grab the knife out of the defendant's hand and run back toward the house, allowed the jury to infer that she participated in its concealment. See *State* v. *Moye*, 119 Conn. App. 143, 150, 986 A.2d 1134, cert. denied, 297 Conn. 907, 995 A.2d 638 (2010).

In sum, viewing all of the evidence available in the light most favorable to sustaining the verdict, we conclude that it was sufficient for the jury to find that the defendant intended to inflict serious physical injury on the victim.

II

The defendant also claims that the court committed plain error by failing to instruct the jury, sua sponte, on defense of others; see General Statutes § 53a-19 (a);[9] when the evidence demonstrated that the defendant was seeking to act in defense of Michael. The state responds by arguing that the court had no obligation, sua sponte, to instruct the jury on defense of others, and, even if it did, the defendant failed to meet her burden of producing sufficient evidence to conclude that she assaulted the victim in defense of another. We agree with the state that the trial court had no obligation, sua sponte, to instruct the jury on defense of others.

The defendant concedes that she failed to request a jury instruction on defense of others during the trial. The defendant also acknowledges that, in a long line of cases, our Supreme Court and this court have concluded that a trial court is not required to provide a defense instruction sua sponte. See, e.g., *State* v. *Bonilla*, 317 Conn. 758, 770, 120 A.3d 481 (2015) (collecting cases). Relying on *State* v. *Ortiz*, 71 Conn. App. 865, 874–77, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002), in which this court held that it was plain error for a trial court to fail to instruct, sua sponte, on the defense of inoperability, written directly into the statute for robbery in the first degree; see General Statutes § 53a-134; the defendant, nevertheless, maintains that her conviction should be reversed through the extraordinary remedy of the plain error doctrine. See Practice Book § 60-5. The state argues that we should take this opportunity to clarify that, in light of subsequent precedent from our Supreme Court, *Ortiz* has been overruled to the extent that it stands for the general proposition that a court's failure to provide a defense instruction sua sponte may be reviewed for

plain error. We accept the state's invitation.

In *State* v. *Ebron*, 292 Conn. 656, 691–92, 975 A.2d 17 (2009), overruled in part on other grounds by *State* v. *Kitchens*, 299 Conn. 447, 472–73, 10 A.3d 942 (2011), our Supreme Court stated unequivocally that "trial courts do not have a duty to charge the jury, sua sponte, on defenses, affirmative or nonaffirmative in nature, that are not requested by the defendant." In *Ebron*, the court explained, in a footnote, that *Ortiz* involved circumstances where "there was uncontroverted evidence from the state's witnesses that the gun used was inoperable, and the affirmative defense at issue was written directly into the statute that the defendant was charged with violating." Id., 693 n.30. In light of the subsequent development of case law in this area, we take the opportunity to make clear that *Ortiz*, insofar that it allows plain error review for the failure to provide, sua sponte, a jury instruction on a defense, is limited to circumstances in which the affirmative defense at issue was specifically provided for in the text of the statute that the defendant was charged with violating. *Ortiz* may not be relied on for the general, broad proposition that a trial court's failure to provide, sua sponte, a defense instruction constitutes plain error. See *State* v. *Martin*, 100 Conn. App. 742, 751 n.5, 919 A.2d 508, cert. denied, 282 Conn. 928, 926 A.2d 667 (2007). As our Supreme Court has aptly explained, "it would be inappropriate to place the onus on a trial court to discern, without any request from the parties, the specific defenses on which a jury should be instructed." *State* v. *Bonilla*, supra, 317 Conn. 772. Accordingly, the court was under no obligation to provide a defense of others instruction to the jury.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] More precisely, the defendant's second claim is that the state failed to disprove her defense of self-defense beyond a reasonable doubt because there was no evidence that the defendant intended to use deadly physical force on the victim. We need not address this claim because the defendant concedes that the issue is controlled by our Supreme Court's decision in *State* v. *Singleton*, 292 Conn. 734, 974 A.2d 679 (2009), which we cannot modify. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that this court has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by our precedent"). We recognize that she raises it only for the purpose of preserving it for further appellate review.

[3] Because Demetrius Reed and Michael Reed share a surname, we will refer to them by their first names.

[4] Demetrius' niece is Michael's daughter.

[5] As it turned out, Christian did not need to be picked up at that time because he had basketball practice after school.

[6] The jury reasonably could have found that a second knife, a Swiss Army style knife distinct from the one used by the defendant to injure the victim, was used by Demetrius to slash a tire on the defendant's automobile before he drove the victim to St. Vincent's.

[7] At trial, the state proceeded on the two counts in the alternative. Accordingly, the trial court instructed the jury that it could not return a guilty verdict on both counts.

[8] As the state points out, the trial court declined to instruct the jury on the consciousness of guilt evidence. The court stated: "I am going to decline the consciousness of guilt instruction, although the [s]tate obviously has a right to argue anything that you would like to argue." In reviewing the defendant's sufficiency claim, however, we are entitled to examine such evidence because it was available for the jury to consider in reaching its verdict. See *State* v. *Juarez*, 179 Conn. App. 588, 595, 180 A.3d 1015 (2018) (in reviewing sufficiency claim, we consider whether cumulative effect of evidence adduced at trial sufficiently justified jury's verdict of guilt beyond reasonable doubt), cert. denied, 331 Conn. 910, 203 A.3d 1245 (2019).

[9] General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend . . . a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[10] We find it prudent to make the following observation on the defendant's attempted use of the defense of others defense.

As explained by our Supreme Court, "[t]he defense of others, like self-defense, is a justification defense. These defenses operate to exempt from punishment otherwise criminal conduct when the harm from such conduct is deemed to be outweighed by the need to avoid an even greater harm or to further a greater societal interest. . . . Thus, conduct that is found to be justified is, under the circumstances, not criminal. . . . All justification defenses share a similar internal structure: special triggering circumstances permit a necessary and proportional response." (Citation omitted; internal quotation marks omitted.) *State* v. *Bryan*, 307 Conn. 823, 832–33, 60 A.3d 246 (2013); see also General Statutes § 53a-19 (a). This court thoroughly explained the contours of the defense in *State* v. *Hall-Davis*, 177 Conn. App. 211, 226–27, 172 A.3d 222, cert. denied, 327 Conn. 987, 175 A.3d 43 (2017).

The defendant's theory of defense of others is that she proceeded toward the fight in order to protect Michael, not from the victim, but from Demetrius, and the victim inhibited her from doing so. The defendant cites no authority, nor are we aware of any, for the proposition that the defense of others defense is available when a defendant uses physical force on a person who interferes, i.e., the victim, with her effort to defend a party she reasonably believes is in need of defense from yet another party, who was *not* the victim for purposes of the criminal prosecution, i.e., Michael from Demetrius.