******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* MARK
STEVEN CAPASSO, JR.
(AC 43051)

Bright, C. J., and Moll and DiPentima, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of reckless burning and false
reporting of an incident in the second degree, the defendant appealed
to this court. The defendant, who previously had been living in China
for more than a decade, and his wife and two children were temporarily
living with his parents. The defendant and his family intended to return
to China but were having difficulty obtaining certain travel documenta-
tion. As a result, the defendant devised a plan that he hoped would
expedite that documentation, whereby he sought to leverage one Chi-
nese agency against another by making it appear that the Chinese govern-
ment had attempted to intimidate him and his family by entering his
parents' house and starting a fire. To effectuate this plan, the defendant
spread an accelerant, Sterno, a flammable, fire starting gel, throughout
the house while his parents, wife, and children were sleeping. The
defendant then lit a candle and used it to burn a sheet for thirty to
sixty seconds. After extinguishing the fire, the defendant awakened his
parents and told them that he had heard someone in the house and that
the person had spread accelerant and started a fire. His father then
called 911. On appeal, the defendant claimed that the evidence was
insufficient to support his conviction of reckless burning and that the
trial court erred in denying his motion to set aside the verdict because
his conviction of reckless burning was against the manifest weight of
the evidence. Specifically, the defendant claimed that the state failed
to present sufficient evidence to prove beyond a reasonable doubt that
he recklessly endangered the building "of another" as required by the
reckless burning statute (§ 53a-114 (a)) and that his conviction was
against the manifest weight of the evidence because his behavior was
not reckless. *Held*:

1. The evidence was sufficient to support the defendant's conviction of
reckless burning: the jury reasonably could have concluded beyond a
reasonable doubt that the endangered building where the fire was set
was a building "of another" as required by § 53a-114; moreover, contrary
to the defendant's claim, the state did not have the burden to prove
that the house was owned exclusively by someone other than the defen-
dant, as the phrase "of another" plainly and unambiguously applies to
any proprietary or possessory interest in the endangered building by
someone other than the defendant, whether exclusive or nonexclusive;
furthermore, the jury was presented with evidence from which it reason-
ably could have concluded that the defendant's parents owned the house,
including evidence that the defendant stated to the police that the house
belonged to his parents and that he felt like he was imposing on his
parents by staying there with his family, the fact that he had lived
in China for nearly twelve years, and the defendant's failure to state
affirmatively that he owned the house when questioned by the state at
trial about who owned the house.

2. The trial court did not abuse its discretion in denying the defendant's
motion to set aside the verdict on the ground that the verdict was
contrary to the manifest weight of the evidence: there was a reasonable
basis for the jury to find that the defendant's intentional starting of the
fire recklessly placed the house in danger of destruction or damage;
there was evidence that the defendant spread an accelerant around the
house at 2 a.m. while his parents, wife, and children were sleeping, he
set a sheet on fire within five feet of the accelerant, he did not fully
read the warning labels for the accelerant, he had no experience using
the particular accelerant, and he did not have a fire extinguisher or a
contingency plan in place should his plan go awry; moreover, contrary
to the defendant's claim, the court did not rely exclusively on the jury's
verdict in ruling on the motion but independently weighed the evidence
in accordance with the standard governing a trial court's consideration of

a manifest weight of the evidence claim, the court's statements indicating that it conducted its own assessment of the evidence.

Argued January 4—officially released March 16, 2021

*Procedural History*

Substitute information charging the defendant with the crimes of reckless burning and false reporting of an incident in the second degree, brought to the Superior Court in the judicial district of New London and tried to the jury before *Jongbloed, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*W. Theodore Koch III*, assigned counsel, for the appellant (defendant).

*Beth M. Kailey* and *Geoffrey B. Young*, certified legal interns, with whom were *Jennifer F. Miller* and *Matthew A. Weiner*, assistant state's attorneys, and, on the brief, *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Mark Steven Capasso, Jr., appeals from the judgment of conviction, rendered following a jury trial, of reckless burning in violation of General Statutes § 53a-114.[1] On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction of reckless burning, and (2) his conviction of reckless burning was against the manifest weight of the evidence. We disagree and, accordingly, affirm the judgment of conviction.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our disposition of the defendant's claims. In December, 2004, the defendant moved to China to perform missionary work, and he lived there for nearly twelve years prior to returning to Connecticut. In September, 2017, the defendant, his wife, and their two children were living temporarily with his parents at 145 Bloomingdale Road in Quaker Hill. The defendant and his family intended to return to China but were having difficulty obtaining travel documentation for their children. As a result of these difficulties, the defendant devised a plan that he hoped would expedite the travel documentation process. Specifically, the defendant sought to leverage one Chinese agency against another by making it appear as though the Chinese government had attempted to intimidate him and his family by entering his parents' house and starting a fire.

To accomplish this goal, the defendant purchased Sterno, a flammable, fire starting gel, from a Walmart store. Three days later, on September 4, 2017, at approximately 2 a.m., the defendant spread Sterno throughout the house while his parents, his wife, and their children were sleeping. The defendant then lit a candle and used it to burn a sheet for thirty to sixty seconds. After extinguishing the fire, the defendant awakened his parents and told them that he had heard someone in the house and that the person had spread accelerant and started a fire. The defendant's father then called 911.

When the police arrived, the defendant informed them that he was in the basement on the phone with the Chinese consulate when he heard footsteps upstairs. He then went upstairs and found a burning candle and sheet, along with a bottle of Sterno that he had never seen before. The defendant also told the police that he believed the Chinese consulate was responsible for the incident.

While at the scene, the police searched the premises for signs of forced entry but found none. An officer wrote down the stock keeping unit (SKU) number that was on the Sterno bottle to help determine where the bottle had been purchased and began investigating whether any local stores carried Sterno products with the same SKU number. The officer determined that the

SKU number on the Sterno bottle matched that of a Sterno product sold at a Walmart store in Waterford. He viewed the store's security footage and observed the defendant purchasing the Sterno. The officer contacted the defendant and asked him to come to the police department to discuss the case further. During the interview, the defendant admitted that he had purchased the Sterno and had spread it around his parents' house.

Thereafter, the defendant was arrested and charged by way of a substitute information with one count of reckless burning in violation of § 53a-114 and one count of false reporting of an incident in the second degree in violation of General Statutes (Rev. to 2016) § 53a-180c (a) (1). The jury found the defendant guilty of both counts, and the court sentenced the defendant to four years of incarceration, execution suspended after one year, followed by three years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that his conviction of reckless burning must be reversed because the state failed to present sufficient evidence to prove beyond a reasonable doubt that he recklessly endangered a building "of another." See General Statutes § 53a-114 (a). The defendant's claim distills into two closely related parts, namely, that the state failed to prove that (1) the defendant did not have an ownership interest in the house, and (2) the house at 145 Bloomingdale Road was owned by someone other than the defendant. In response, the state argues that (1) proof of *exclusivity* of ownership by someone other than the defendant is not required under § 53a-114, and (2) it produced ample evidence from which the jury reasonably could have found that someone other than the defendant (i.e., the defendant's parents) owned the house. We agree with the state.

Before we reach the merits of the defendant's contentions, we set forth the following relevant legal principles and standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is

reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crafter*, 198 Conn. App. 732, 737–38, 233 A.3d 1227, cert. denied, 335 Conn. 957, 239 A.3d 318 (2020).

To the extent our analysis of the defendant's claim requires us to interpret the reckless burning statute, "our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to [the broader statutory scheme]. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Pond*, 315 Conn. 451, 466–67, 108 A.3d 1083 (2015).

A

We begin by addressing the defendant's argument that the state had the burden to prove that he did not have an ownership interest in the house at 145 Bloomingdale Road. Stated differently, the defendant contends that the phrase "building . . . of another" in § 53a-114 (a) is satisfied only if the endangered building is owned *exclusively* by someone else. We disagree.

We turn to the text of § 53a-114 (a), which provides: "A person is guilty of reckless burning when he intentionally starts a fire or causes an explosion, whether on his own property or another's, and thereby recklessly places a building, as defined in section 53a-100, *of*

*another* in danger of destruction or damage." (Emphasis added.) General Statutes § 53a-114 (a). We observe that there is no statutory language to support the defendant's proposition that the state must prove that the endangered building is owned (or possessed) *exclusively* by someone else. Nor does such a proposition make sense as a matter of public policy. "[T]he purpose of § 53a-114 . . . [is] to penalize those who endanger another's property through recklessness." (Footnote omitted.) *State* v. *Parmalee*, 197 Conn. 158, 164, 496 A.2d 186 (1985). It would make little sense for the reckless burning statute to except from its purview an individual—whose conduct otherwise would fall within its reach—merely because that individual also has some ownership or possessory interest in the endangered building. Accordingly, we consider the language "of another" to be unambiguous because it is not susceptible to more than one *reasonable* interpretation. In short, we construe the phrase "of another" to apply plainly and unambiguously to any proprietary or possessory interest in the endangered building by someone other than the defendant, whether exclusive or nonexclusive.

Moreover, even if the phrase "of another" in § 53a-114 (a) were deemed susceptible to more than one reasonable interpretation, and therefore ambiguous, extratextual evidence of the meaning of the statute buttresses our conclusion. Section 53a-114 is contained within our arson statutes, which "are based on parallel provisions of the New York Revised Penal Law and the Model Penal Code and similarly define the various grades of arson in terms of the degree of risk to human safety. Report of the Commission to Revise the Criminal Statutes (1965), pp. 3, 13–14." (Footnote omitted.) *State* v. *Parmalee*, supra, 197 Conn. 163. Although the General Statutes do not define "of another" for purposes of the arson statutes, the Model Penal Code[2] defines "of another" for purposes of arson and related offenses as "anyone other than the actor [having] a possessory or proprietary interest . . . ." 2 A.L.I., Model Penal Code and Commentaries (1985) § 220.1 (4), p. 140.

On the basis of the foregoing, we reject the defendant's argument that the state had the burden to prove that the house at 145 Bloomingdale Road was owned *exclusively* by someone other than the defendant.

B

We next address the defendant's argument that there was insufficient evidence to prove beyond a reasonable doubt that the house was owned by someone else. This argument also fails.

The following evidence, on which the jury reasonably could have relied, and procedural history are relevant to our analysis. During the course of their investigation, the police interviewed the defendant twice. The first interview occurred shortly after the police responded

to the scene. During this interview, an officer asked the defendant whether his parents could have started the fire. The defendant responded that his parents did not set the fire because "it's their house." The defendant also told the officer that he had lived in China for most of the past twelve years and mentioned that he occasionally brings groups back from China to Connecticut for short-term trips. When asked by the officer if he brings these groups to his parents' house, the defendant responded "no" and instead stated that they stay in hotels or with host families. He also told the officer that he and his brother would rent a house in New London to accommodate these groups.

The police interviewed the defendant for the second time later that morning at the police station. During this interview, the defendant told the police that he and his family did not intend to stay in Connecticut permanently and that they planned on returning to China where he taught English. He also admitted that he felt that his family was imposing on his parents while staying at the house. Specifically, the defendant stated that "he knew deep down" that "his parents, as welcoming as they've been for the past couple of months . . . have their lifestyle and . . . if we have to overstay because of the situation . . . I feel like it's more of a burden on them."

Finally, during trial, the prosecutor questioned the defendant about who owned the house. The defendant did not affirmatively state that he owned the house. Instead, he simply responded that "[i]t's my home when I'm here . . . ."

After the state rested its case, the defendant moved to dismiss the reckless burning count on the ground that the state had failed to prove that the defendant recklessly endangered a building "of another" because it did not offer any evidence of who owned the house. The trial court denied the motion, concluding that there was sufficient evidence that a person other than the defendant owned the house. After the jury returned its verdict, the defendant filed a motion to set aside the verdict with respect to the reckless burning count, in which he, inter alia, repeated the same argument. In that connection, the defendant argued that the state should have been required to prove ownership of 145 Bloomingdale Road "with proof of the highest level of certitude: a deed, a mortgage, land records from city hall or some other such hard document." The court denied his motion, stating that, "[a]lthough the state did not introduce land records or a deed or mortgage, the evidence, in fact, was overwhelming that the defendant and his family were living at his parents' house. In fact, the defendant's own statements included his feelings about imposing on his parents by living there with his wife and children."

In his principal appellate brief, the defendant claims,

without citation to any relevant legal authority, that the state should have been required to produce documentary evidence of the ownership of 145 Bloomingdale Road (such as a deed or a mortgage) unless the state could show that such direct evidence was unavailable. At oral argument before this court, however, the defendant abandoned his assertion that *documentary* evidence of ownership is required in a reckless burning case. Instead, the defendant argued, additional evidence was required in the present case in the form of, for example, testimony of someone who was present at the closing, a representative of the bank, or a representative from town hall. The defendant's argument is unavailing.

As an initial matter, the plain language of § 53a-114 (a) does not require that "of another" be proven by a particular form of evidence, such as a deed, a mortgage, or the testimony of a particular individual. The defendant has not cited, and we are unaware of, any authority that supports such a proposition, and we decline the defendant's invitation to exercise our inherent supervisory authority to adopt such a requirement.

In the present case, the state produced sufficient evidence from which the jury reasonably could have found that the defendant's parents owned the house. When interviewed at the scene, the defendant expressly stated that it was "their house." The state also produced evidence indicating that the defendant had spent most of the last twelve years in China, he and his family did not intend to move back to Connecticut permanently, they planned their return to Connecticut as a short-term trip, and they already had plans to move back to China. The defendant also told the police that he felt as though he was burdening his parents by staying with them. Moreover, when an officer asked the defendant whether he brought groups to Connecticut for short-term trips to his parents' house, the defendant responded that he did not, and stated that they stayed in hotels, with host families, or at a house in New London that he and his brother would rent to accommodate them. He also failed to state affirmatively that he owned the house when questioned at trial about who owned the house, allowing for a reasonable inference that he did not own the house.

In sum, viewing all of the evidence available in the light most favorable to sustaining the verdict; see *State* v. *Crafter*, supra, 198 Conn. App. 738; we conclude that there was sufficient evidence from which the jury reasonably could have found beyond a reasonable doubt that the endangered building was that "of another." Accordingly, the defendant's sufficiency of the evidence claim fails.

II

The defendant also claims that the court erred in denying his motion to set aside the verdict as to the

reckless burning count because the verdict was against the manifest weight of the evidence in that "his behavior, though ill-advised, manifestly was not reckless."[3] For the reasons that follow, we are unpersuaded.

We begin by reviewing the legal principles that govern a weight of the evidence claim. "At the outset, we note that a challenge to the *weight* of the evidence is not the same as a challenge to the *sufficiency* of the evidence. A sufficiency claim dispute[s] that the state presented sufficient evidence, if found credible by the jury, to sustain [the defendant's] conviction. . . . In contrast, a weight claim does not contend that the state's evidence . . . was insufficient, as a matter of law, to establish the defendant's guilt beyond a reasonable doubt. . . . Rather, [it] asserts that the state's case . . . was so flimsy as to raise a substantial question regarding the reliability of the verdict [and that there was a] serious danger that [the defendant] was wrongly convicted. . . . .

"Given that these two types of claims raise fundamentally different issues, the inquiry appropriately undertaken by a court ruling on a sufficiency of the evidence claim differs substantially from that of a court ruling on a weight of the evidence claim. In reviewing the sufficiency of the evidence, a court considers whether there is a reasonable view of the evidence that would support a *guilty* verdict. . . . In doing so, the court does not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . [It] cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . Thus, a court will not reweigh the evidence or resolve questions of credibility in determining whether the evidence was sufficient. . . .

"In contrast, a court determining if the verdict is against the weight of the evidence does precisely what a court ruling on a sufficiency claim ought not to do. That is, the court must do just *what every juror ought to do* in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict *must do the same* . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial. . . . In other words, the court specifically is required to act as a [seventh] juror

because it must independently assess [the] credibility [of witnesses] and determine the weight that should be given to . . . evidence. . . .

"Thus, because a court is required to independently assess credibility and assign weight to evidence, a weight of the evidence claim necessarily raises the issue of which courts are competent to perform those tasks. It is well settled that *only the judge who presided over the trial* where a challenged verdict was returned is legally competent to decide if that verdict was against the weight of the evidence . . . . Consequently, *a judge in a later proceeding, such as a direct appeal* or a habeas corpus proceeding, *is not legally competent* to decide such a claim on the basis of the cold printed record before it. . . . The rationale behind this rule is sound: [T]he trial court is uniquely situated to entertain a motion to set aside a verdict as against the weight of the evidence because, unlike an appellate court, the trial [court] has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. . . . [T]he trial judge can gauge the tenor of the trial, as [an appellate court], on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Soto*, 175 Conn. App. 739, 745–48, 168 A.3d 605, cert. denied, 327 Conn. 970, 173 A.3d 953 (2017).

It necessarily follows that appellate review of a weight of the evidence claim is greatly circumscribed. Id., 750. "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and a motion for a new trial is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted. . . .

"Thus, if asked to review the trial court's ruling on a weight of the evidence claim presented to it, an appellate court is not to independently make credibility determinations or assign weight to evidence. Furthermore, our task is not to assess the jury's credibility determinations and assignment of weight to evidence. Rather, our task is to review, for an abuse of discretion, the trial court's assessment of the jury's credibility determinations and assignment of weight to evidence." (Citations omitted; internal quotation marks omitted.) Id., 750–51.

The following additional evidence, on which the jury

reasonably could have relied, and procedural history are relevant to our review of the trial court's assessment of the jury's verdict on the reckless burning count. To facilitate his plan to leverage one Chinese agency against another, the defendant traveled to a Walmart store to purchase an accelerant. Although the defendant had never used the Sterno flammable gel before, he chose it because he believed that he would be able to see it, thus making it easier to manage. He did not, however, read the entire warning label on the bottle, which stated that the product should be used only in well ventilated areas and away from heat, sparks, and open flames. While the defendant was carrying out his plan, he also did not have a fire extinguisher nearby, despite lighting the candle and sheet in close proximity to the accelerant.[4] Nor did he have any other contingency plan in the event that the fire became unmanageable.

In the defendant's motion to set aside the verdict, he argued that the jury's verdict on the reckless burning count was contrary to the weight of the evidence. Specifically, he claimed that his behavior was not reckless because he consciously regarded the risks by carefully planning the conditions under which he would start the fire. On April 9, 2019, the court heard oral argument on the motion. The court rejected the defendant's argument, concluding that "an individual can think about their conduct, but in deciding to pursue a course of conduct, they can, in fact, act recklessly. And here the jury found that that is what happened. The jury found, in accordance with the evidence, that the defendant consciously disregarded a substantial and unjustifiable risk. The verdict was not against the manifest weight of the evidence . . . ." Accordingly, the court denied the motion.

On appeal, the defendant largely seeks to reargue certain evidence relating to the manner in which he "staged the scene"—evidence that was assessed by the jury. His argument ignores other evidence necessarily assessed by the jury, including the following. The jury heard evidence that the defendant spread Sterno, an accelerant, around the house at around 2 a.m. while his wife, their children, and his parents were asleep upstairs. He then lit a candle and used it to set a sheet on fire for approximately thirty to sixty seconds within five feet of some of the Sterno. The defendant engaged in such conduct without reading the product's warning labels fully, without having any experience using this particular Sterno product, without having a fire extinguisher nearby, and without any other contingency plan in case his plan went awry. Although the defendant testified that he selected the Sterno gel because he thought that he would be able to see and manage it, the jury reasonably could have found that the defendant, in failing to read and abide by the warning label and in failing to have a contingency plan, consciously disre-

garded a substantial and unjustifiable risk. Because there was a reasonable basis for the jury to find that the defendant's intentional starting of the fire recklessly placed the house in danger of destruction or damage, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to set aside the verdict on the ground that the verdict was against the weight of the evidence.

The defendant further argues that the court abused its discretion in denying his motion because the court appears to have relied exclusively on the jury's verdict and neglected to conduct its own assessment of the evidence. We disagree with the defendant's characterization of the court's analysis. The court, in denying the defendant's motion, concluded that "an individual can think about their conduct, but in deciding to pursue a course of conduct, they can, in fact, act recklessly" and that the "jury found, in accordance with the evidence, that the defendant consciously disregarded a substantial and unjustifiable risk." The court then stated its own conclusion that the "verdict was not against the manifest weight of the evidence . . . ." These statements indicate that the court independently weighed the evidence and that it did not substitute the jury's analysis for its own in accordance with the standard governing a trial court's consideration of a weight of the evidence claim.[5] See *State* v. *Soto*, supra, 175 Conn. App. 747–48.

In sum, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to set aside the verdict as to the reckless burning count on the ground that the verdict was contrary to the weight of the evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The jury also found the defendant guilty of false reporting of an incident in the second degree in violation of General Statutes (Rev. to 2016) § 53a-180c (a) (1). The defendant does not challenge that conviction in the present appeal.

[2] The Model Penal Code provides that a person commits reckless burning or exploding "if he purposely starts a fire or causes an explosion, whether on his own property or another's, and thereby recklessly: (a) places another person in danger of death or bodily injury; or (b) places a building or occupied structure of another in danger of damage or destruction." 2 A.L.I., Model Penal Code and Commentaries (1985) § 220.1 (2), p. 140.

[3] General Statutes § 53a-3, which contains the definitions for our Penal Code, unless different meanings are expressly specified, provides that "[a] person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ." General Statutes § 53a-3 (13).

[4] At trial, the defendant estimated that the open flame was approximately five feet away from the Sterno.

[5] In addition, to the extent the defendant suggests that the court was required to make detailed factual findings in connection with its denial of the defendant's motion to set aside the verdict, we note that he has not cited any authority that stands for such a proposition, and we are not aware

of any.

_____